(April 20, 1978)

■ Thomas I. Fitzgerald, Public Administrator of the County of New York, as Administrator of the Estate of Carl P. Blume, Deceased, Respondent, v American Trading and Production Corp., Appellant.—Judgment, Supreme Court, New York County, entered May 17, 1977 in the sum of $1,227,520.12, unanimously reversed, on the law, vacated and the complaint dismissed, without costs and without disbursements. The verdict in plaintiff's favor for the wrongful death of Carl P. Blume, master of the *S. S. Washington Trader,* a converted tanker owned by defendant, was based on both unseaworthiness and negligence. On December 16, 1966, Master Blume perished in the North Pacific. He was last seen in circumstances suggesting, as plaintiff contends, that he was swept overboard by heavy seas as he was making a tour of inspection at first light. It is conceded that the vessel had been loaded to the maximum permitted for a voyage in the summer zone but that it was overloaded for the winter zone. A vessel in the winter zone will encounter heavier seas. Hence, the vessel requires more reserve buoyancy for safety. This reserve buoyancy factor is determined by the depth of the hull in the water. The lower the hull is submerged the less free board or buoyancy. The depth of the hull can be gauged by looking at the vessel's Plimsoll marks. The evidence discloses that the shipowner designated the port of departure and destination as well as a port for taking on additional bunkers. The loading of the vessel, the amount of fuel to be taken aboard, the amount of stores as well as the setting of a course for the vessel are the exclusive responsibility of the master. Master Blume set a course which he selected from three available routes. In point of fact, there was an insufficient supply of fuel for one of the routes, and the other posed greater hazards in the winter months than the one chosen. When the vessel, loaded with grain, left Portland, Oregon, bound for India, the certificate of loading issued by the Coast Guard showed compliance with the international load line regulations for the summer zone. The course set by Master Blume, however, took the vessel into the winter zone. This was a violation of law. (US Code, tit 46, § 85 *et seq.)* From the time of her departure on December 3 until the morning of December 16, the *Trader* encountered heavy seas and bad weather. As early as December 5 through 7, the *Trader* was "rolling heavily in deep * * * swells!" On December 8 through 9, her log showed "mountainous seas on deck, heavy swell." Overloading a vessel is, of course, a statutory fault and an overloaded vessel is unseaworthy. (See *The Indien,* 71 F2d 752; *The Benjamin Nobel,* 244 F 95.) However, the trial court quite properly took the issue of overloading as well as the setting of the course through the winter zone away from the jury because both were solely the responsibility of the master (cf. *Walker v Lykes Bros. S. S. Co.,* 193 F2d 772). By taking his overloaded vessel into the winter zone Master Blume consciously violated a duty of his employment as master. (Cf. *The Giles Loring,* 48 F 463.) Once these issues were removed from the jury's consideration we fail to find evidence of either unseaworthiness or negligence in this record sufficient to sustain the verdict. There simply is no evidence of a breakdown in the ship's steering mechanism in the early morning of December 16, as

plaintiff contends. The record is clear that there was a loss of rudder control on only one occasion at 0215 hours on the morning of December 13, a few days earlier. That loss of steering was attributed to an open oil by-pass valve in the steering engine and it is undisputed that control was restored 13 minutes later. Absence of proof of the rudder failure on December 16 eliminates two basic contentions of plaintiff, namely, that the inability to steer and maintain headway constituted an unseaworthy condition which resulted in damage to the vessel from the heavy seas, and that the master was swept overboard while performing his duty to inspect to determine the extent of that damage. Even if it were shown that the vessel sustained damage on the 13th from the heavy seas no causal connection was shown between that incident and the loss of the master a few days later. As for the specification of unseaworthiness based on a broken or bent storm railing on the poop deck, there simply is no proof that any defective railing was a proximate cause of the master's loss. There is no proof even that Master Blume went overboard in an area where the railing was defective. In fact, plaintiff's expert testified that the master could have been knocked unconscious against a railing or bulkhead or washed directly into the sea. Therefore, any finding that a defective storm railing on the poop deck contributed to the master's loss is sheer speculation. It is evident from testimony in the record that an overloaded vessel encountering heavy seas in the winter zone would tend to ship waves across its decks. The combined weight of the cargo itself and the waves washing over the decks would submerge the vessel deeper into the water. Thus, the presence of any sea water in the forward parts of the *Trader* after the master was lost was caused by the overloading of the vessel. There is no evidence that the water entered that area for any other reason. The record further discloses that at the time the master went overboard the *Trader* was "pooping the seas", which is a nautical term for bow-to-stern movement with the vessel scooping up and taking seas over the stern. Plaintiff's expert testified that taking seas over the stern is dangerous in heavy seas. This is, of course, a navigational act attributable to the master. As for the claims of negligence we find neither fault nor proximate cause even if fault exists. There is no evidence that the crew members should have known that the master was washed overboard or that they failed to institute proper procedures to determine if he was lost. Nor is there a basis in the record from which to conclude that the chief mate should have accompanied the master on his fateful inspection tour. Finally, we note that were we not dismissing for insufficiency of proof, we would, in any event, set aside the verdict as against the weight of the credible evidence and because the award of damages was excessive. Concur—Murphy, P. J., Birns, Silverman, Evans and Sullivan, JJ.